UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

VINCENT SPRINGER,

       Plaintiff,              <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                                    CV-01-4392 (DGT)

THE CITY OF NEW YORK, NEW YORK
CITY HEALTH AND HOSPITALS
CORPORATION, INC., AND KINGS
COUNTY HOSPITAL,

       Defendants.

--------------------------------X

Trager, J:


     Vincent Springer ("plaintiff"), brings this employment

discrimination action against defendants, New York City Health &

Hospital Corporation, Inc. ("HHC"), Kings County Hospital Corp.

("KCHC") and the City of New York (individually, the "City" and

collectively, "defendants"). (Compl. ¶ 1.) Plaintiff alleges

that defendants discriminated against him based on his age and

race in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age

Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

("ADEA"), the Civil Rights Act of 1866, as amended, 42 U.S.C.

§ 1981 ("§ 1981") and the New York State Human Rights Law, N.Y.

Exec. Law § 290 et seq. ("SHRL"). (Compl. ¶ 1.) Defendants move

for summary judgment dismissing the complaint in its entirety

pursuant to Federal Rule of Civil Procedure 56. For the

following reasons, defendants' motion for summary judgment is granted as to plaintiff's termination claims, racial discrimination rehiring claim, state law claims and as to all claims against the City. It is denied as to plaintiff's remaining age (ADEA) rehiring claim.

## Background

In 1989 plaintiff, a black male from Barbados born in 1936, passed Civil Service Exam 7162 for carpentry and was placed on the corporate eligible list as number 119. (Aff. of Pl. ¶ 4; Pl. Ex. 6; Def. Ex. D.) On January 28, 1992, Mary Brady ("Brady"), a Coordinator in the Office of Examination and Certification Service of HHC, sent plaintiff a letter informing him that his name had been selected from the corporate eligible list and inviting him to interview for a temporary position as a carpenter. (Def. Ex. D.)

In February 1992, HHC hired plaintiff as a full-time provisional carpenter[1] at KCHC Central Shops. (Aff. of Pl. ¶ 5;

---

[1] The plaintiff alternates in the title he uses for the job he was hired for, some times describing it as a provisional position, some times describing it as a "temporary provisional" position. (Pl. Mem. of L. 1; Aff. of Pl. ¶ 5.) At least one of the documents he signed when hired has both temporary and the provisional checked off. (Pl. Ex. 10.) Defendants describe plaintiff's position as provisional. (Def. Mem. of L. 3; Def. Ex. F.) The HHC Personnel Rules and Regulations define a temporary employee as one appointed for a fixed period of time. (Def. Mot. for Summ. J. App. A.) The same rules define a provisional employee as one appointed "on the basis of a non-

Def. Local Rule 56.1 Stat. ¶ 1.)  As a carpenter, plaintiff's

duties included, <u>inter</u> <u>alia</u>, hanging doors, installing locks and

door closures, fireproofing and putting up sheet rock walls and

suspended ceilings.  (Aff. of Pl. ¶ 5.)

**(1)**

**Allegations of Discrimination**

Plaintiff alleges various incidents of discrimination over

the course of his employment.  Plaintiff received several

performance evaluations indicating that his work was mostly

satisfactory but that he worked at a slow pace, a claim plaintiff

disputes.  (Pl. Ex. 12, 14-16.)  Plaintiff also claims his

foreman, George Barozie ("Barozie"), would instruct him to

complete tasks within unreasonably short periods of time and not

provide the tools to meet his deadlines; for example, Barozie

allegedly gave plaintiff a faulty lock to install.  (Aff. of Pl.

¶ 23; Pl. Dep. 71.)  In another supposed instance of

discrimination, plaintiff claims he was standing on a ladder

fixing a door when his supervisor, Edward Gorman ("Gorman"),

pushed the door out of plaintiff's hand as he walked by, and, as

a result, plaintiff almost fell off the ladder.  (Aff. of Pl. ¶

competitive examination" but whose appointment only lasts until
the next competitive examination.  <u>Id</u>.  Since there appears to
have never been a set time period attached to plaintiff's
original hiring, and plaintiff was replaced by a person appointed
from the civil service list, the term provisional is more
appropriate.

29.)

Plaintiff cites a fourth incident in 1996, when, while he was on a break, he came into the carpenter's shop and saw a hangman's noose hanging on his locker. (Pl. Dep. 58.) Plaintiff took the noose down but never brought the incident to anyone's attention. <u>Id.</u> Additionally, plaintiff recalls a fourth incident were someone, whose name he could not remember, referred to him as an old man and another incident where an unnamed laborer called him a "boy." (Pl. Dep. 59-60.)

Since plaintiff was still not a permanent employee, he retook the Civil Service Examination in 1997. (Aff. of Pl. ¶ 27.) Plaintiff did not pass this second examination. (Aff. of Pl. ¶ 27.)

**(2)**

**Termination**

Plaintiff received a letter, dated February 24, 1999, from Harold Goldstein ("Goldstein") in the KCHC Human Resources department. The letter informed plaintiff that, as a result of a civil service appointment made from the Civil Service Pool, plaintiff had been displaced from his provisional carpenter position. (Pl. Ex. 4 ¶ 1.) The letter also stated that the action would be effective at the close of business on March 19, 1999. (Pl. Ex. 4 ¶ 1.) Upon receipt of this letter, plaintiff checked his pension and realized he was two months short of

accruing a sufficient number of pension credits to enable him to collect $700 a month in pension. (Pl. Dep. 94-95.)  As a result, plaintiff wrote a letter requesting that defendants continue to employ him for two additional months.  (Pl. Dep. 94-95.) Defendants granted plaintiff's request.

On May 3, 1999, Goldstein sent a second letter to plaintiff reiterating that, because of a civil service appointment, plaintiff had been displaced from his provisional carpenter position and that this action was to be effective May 7, 1999. (Pl. Ex. 4 ¶ 1.)  Plaintiff then requested employment for three additional years.  (Pl. Dep. 95.)  Plaintiff asked for this extra time because he had already worked seven years, and he believed that at ten years his pension would achieve its maximum monthly return rate.  (Pl. Dep. 95-97.)  Gorman informed plaintiff that his request for three additional years was denied.  (Pl. Dep. 97-98.)

### (3)

### Rehiring

At the same time KCHC terminated plaintiff, it also posted a notice advertising temporary carpenter positions.  (Pl. Dep. 54.) Plaintiff stated at his deposition that, upon seeing the advertisement, he went to the personnel office, filled out an application for the position and gave it to a person he knew as "Mrs. Yauway," but who plaintiff thought was formerly named "Mrs.

Kinley." (Pl. Dep. 54.) Subsequent to his application, the KCHC
Human Resources department did not put plaintiff on a qualified
applicant list and in their briefs defendants deny that plaintiff
ever submitted an application for a temporary carpenter position.

(4)

**Charges Filed with the New York State Department of Human Rights**

In October of 1999, plaintiff filed an internal complaint of
discrimination against KCHC.  Plaintiff filed this charge with
Ernest Jones ("Jones"), Director of the HHC Office of Equal
Opportunity.  (Pl. Ex. 1 ¶ 16).  Jones referred plaintiff to Dawn
Nurse ("Nurse") at the KCHC Equal Employment Opportunity Office.
(Pl. Ex. 1 ¶ 16).  Plaintiff claimed he waited five months before
filing the internal discrimination complaint because he did not
know with whom he should file his complaint.  (Pl. Dep. 134.)
After reviewing plaintiff's claims, Nurse rejected them.  She
found the evidence presented did not show discrimination against
plaintiff because of his age or race.  (Def. Ex. E ¶ 14.)  Nurse
additionally noted that plaintiff did not pass the second civil
service exam, which made him a provisional employee who was
simply bumped by a civil service appointee.  (Def. Ex. E ¶ 13.)

On February 9, 2000, plaintiff filed a complaint of
discrimination with the State of New York Division of Human
Rights ("NYDHR").  (Def. Ex. J ¶ 1.)  On January 24, 2001, after
an investigation but no hearing, the NYDHR released a

6

"Determination and Order After Investigation," which stated:
"[t]here is NO PROBABLE CAUSE to believe that [defendants have]
engaged in or [are] engaging in the unlawful discriminatory
practice complained of."  (Def. Ex. K ¶ 2.)  Following this
determination, on June 28, 2001, plaintiff filed the present
action.

### Discussion

### (1)

### Termination

**a. Title VII and ADEA claims**

Plaintiff's termination claims under Title VII and the ADEA
are time-barred.  Procedures set forth in Title VII and the ADEA
require that, in New York, for a district court to be able to
hear a claim under either law, the claimant must initiate
proceedings with the EEOC or the NYDHR within 300 days from the
alleged discriminatory act.  29 U.S.C. §§ 626(d)(2), 633(b); 42
U.S.C. § 2000e-5(c),(e)(1); <u>Tewksbury v. Ottaway Newspapers</u>, 192
F.3d 322, 329 (2d Cir. 1999).  Charges received either by the
EEOC or the NYDHR shall be deemed received by the other agency
for purposes of determining the timeliness of the charge.  <u>Id.</u>,
192 F.3d at 327.

The 300 day limitations period begins to run upon the
claimant's notification of the discriminatory act; not when the

discriminatory act takes effect. <u>Del. State Coll. v. Ricks</u>, 449
U.S. 250, 258 (1980) (holding that the filing limitations period
for a Title VII claim began when the college told the employee he
was denied tenure despite his continued employment); <u>Miller v.
International Tel. and Tel. Corp.</u>, 755 F.2d 20, 24 (2d Cir. 1985)
(stating that the limitations period for an ADEA claim beings
with "the employer's commission of the discriminatory act and
[is] not tolled or delayed pending the employee's realization
that the conduct was discriminatory"). In the present matter,
under his termination claim, the limitations period began when
plaintiff was notified of the final decision to terminate him.
<u>Economu v. Borg-Warner Corp.</u>, 829 F.2d 311, 315 (2d Cir. 1987)
("the limitation period begins to run 'on the date when the
employee receives a definite notice of the termination.'")
(quoting <u>Miller</u>, 755 F.2d at 23). Here plaintiff received notice
that he was being terminated on February 24, 1999, in the form of
a letter from the KCHC Human Resources department. (Ex. F).
Plaintiff did not file with NYDHR until February 9, 2000, 350
days after his first notice of termination, which was 50 days
beyond the 300 day limit. Therefore, plaintiff's Title VII and
ADEA claims based upon his termination are time-barred.

Plaintiff twice requested that defendants continue to employ
him for set periods of time. Defendants granted plaintiff's
request for two additional months but later rejected his request

for three additional years of employment. Continued employment, however, "is insufficient to prolong the life of a cause of action". Del. State Coll., 449 U.S. at 257 (internal citation omitted). Even though defendants granted plaintiff's first request, their ultimate determination to terminate plaintiff never changed. Therefore, since plaintiff knew or should have known on February 24, 1999 that defendants intended to release him, his wrongful termination claims under Title VII and the ADEA are time-barred. Commodari v. Long Island University, 89 F. Supp. 2d 353, 380 (E.D.N.Y. 2000) (holding that a later decision not to rescind an earlier determination to terminate a professor was not sufficient to toll the initial time-barred termination decision).

**b. § 1981 claims**

In addition to his Title VII and ADEA claims, plaintiff also argues defendants terminated him due to his race in violation of § 1981. This law does not carry the same 300-day statute of limitations found under Title VII and the ADEA, therefore, plaintiff's § 1981 claims will be reviewed on their merits. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004).

Claims brought under § 1981 are governed by the same McDonnell Douglas burden-shifting approach used in Title VII cases. Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988)

(citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).

In this analysis, plaintiff has the initial burden to show a
prima facie case for discrimination.  <u>Id.</u>  If plaintiff shows a
prima facie case, then the burden of production shifts to
defendants to provide a legitimate, nondiscriminatory reason for
the termination.  <u>Id.</u>  Finally, if defendants surmount this
burden, plaintiff has the ultimate burden of persuasion to show
that defendants' claimed legitimate reason was not their "true
reason, but rather a pretext for discrimination."  <u>Id.</u>  <u>See also</u>
<u>Ebanks v. Neiman Marcus Group, Inc.</u>, __ F. Supp. 2d __, 2006 WL
287408, at *3 (S.D.N.Y. Feb. 3, 2006) (applying this standard,
under § 1981, in the wrongful termination context).  Under this
ultimate burden, plaintiff must present sufficient evidence that
a jury could find that defendants' reason for terminating
plaintiff was "more likely than not based in whole or in part on
discrimination."  <u>Stern v. Trustees of Columbia Univ. in City of</u>
<u>New York</u>, 131 F.3d 305, 312 (2d Cir. 1997).  <u>See also</u> <u>Zimmermann</u>
<u>v. Associates First Capital Corp.</u>, 251 F.3d 376, 381-3 (2d Cir.
2001) (discussing the standard for what a plaintiff must show to
succeed on summary judgment under Title VII).

To show a prima facie case for discriminatory discharge
plaintiff must produce evidence that: (1) he belongs to a
protected class; (2) at the time of his discharge he was
performing his duties satisfactorily; (3) he was discharged; and

(4) the circumstances of his discharge gave rise to an inference

of discrimination. <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134

(2d Cir. 1997) (stating that requirements for prima facie case of

discriminatory discharge under § 1981 are the same as under Title

VII). The burden carried by the plaintiff at this stage in the

analysis is <u>de minimis</u>. <u>Zimmermann</u>, 251 F.3d at 381.

The parties do not contest that plaintiff passes the first

three parts of this prima facie test. For the fourth part,

establishing an inference of disability, plaintiff points to his

replacement by a white male from the civil service list. Under

the <u>de minimis</u> prima facie standard plaintiff can establish a

discriminatory inference by the fact that he was replaced in his

position by an individual not in his protected class. <u>Id.</u>; <u>De la

Cruz v. New York City Human Resources Admin. Dept. of Social

Services</u>, 82 F.3d 16, 20 (2d Cir. 1996) (holding that a male

Puerto Rican plaintiff had shown an inference of discrimination

where he was replaced by a black female). Since plaintiff is a

black male replaced by a white male, he has shown sufficient

evidence to pass the fourth part of the prima facie test and,

thus, has presented a prima facie case for discriminatory

discharge.

Next, however, defendants proffer a compelling legitimate,

nondiscriminatory reason for plaintiff's termination: defendants

were required by law to terminate him. New York state law

requires that after the establishment of a new civil service
eligibility list, all provisional civil service employees must be
terminated within two months and their positions must be filled
by eligible individuals off the civil service list.  N.Y. Civ.
Serv. Law § 65(3) (McKinney 1999).  This law is incorporated into
the HHC Personnel Rules and Regulations at § 5.5.4.  (Def. Mot.
for Summ. J. App. A.)  In 1997 the state conducted a new civil
service exam for the position the plaintiff held.  From this
examination a new civil service list was established, effective
December 31, 1998.  Plaintiff failed this exam and, as a result,
was ineligible to be hired as a permanent carpenter.  In
accordance with New York law and their regulations, defendants
terminated plaintiff in February 1999 and filled his position
with an eligible individual from the most recent civil service
list.

Plaintiff provides no direct evidence to show that this
explanation is false or a mere pretext for an underlying
discriminatory purpose.  Instead he relies upon the strength of
his prima facie case.  However, plaintiff's assertion that there
was discrimination simply because he was replaced by a white
person is a very weak rebuttal to defendants' explanation for
plaintiff's termination.  The fact that defendants were willing
to bend the rules and employed plaintiff as a provisional
employee for an additional two months so that he could qualify

for additional pension credits tends to cut against his claim that his termination was for discriminatory reasons.

Plaintiff's only other argument for pretext is that he was not rehired for any of the open temporary carpenter positions and that one black and five white temporary carpenters were hired. The hiring of a black carpenter for the position plaintiff sought severely undercuts any claim of racial animus as distinguishable from possible personal animus.

Presented with this evidence, no rational jury could find that defendants' explanation was mere pretext for a true discriminatory purpose.  <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000) (stating in dicta that no rational fact finder could conclude an action was discriminatory where the plaintiff presents only a weak issue of fact to controvert both a strong nondiscriminatory reason and uncontroverted independent evidence that no discrimination occurred); <u>Norris v. New York City Housing Authority</u>, No. 02 Civ. 6933, 2004 WL 1087600, at *14 (S.D.N.Y. May 14, 2004) (holding that the plaintiff had not met her burden where she had a weak prima facie case, no showing that the proffered reason was false, and where additional indicia of nondiscrimination existed). Thus, plaintiff's claim for discriminatory discharge under § 1981 must be dismissed.

Rehiring

## a. Title VII, ADEA and § 1981 claims

Plaintiff also claims that defendants discriminated against him because they did not rehire him for an open temporary carpenter position after he received notice of his termination. Defendants contend that this claim should be disregarded because it was not administratively exhausted and that even if it is considered, plaintiff fails to show a prima facie case for discrimination.[2] (Def. Brief 18.)

### i. Administrative exhaustion

Before refuting the substance of his argument, defendants contend that plaintiff's rehiring charge should not be considered because he did not raise the claim in his original complaint to the State Divisions of Human Rights. A court should only consider those Title VII and ADEA claims that were either included in the original charge of discrimination or occurred subsequent to that charge. Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1992),

---

[2] As opposed to his termination claims, plaintiff's Title VII and ADEA rehiring claims are not time-barred. Plaintiff never received a formal notification that he was not being rehired. The earliest date when he could have known that he was not going to be rehired was the last day of his employment, May 7, 1999. That date is 278 days before February 9, 2000, the day plaintiff filed with the NYDHR. Plaintiff's rehiring claim is, therefore, within the 300 day limit imposed by Title VII and the ADEA.

<u>superseded by statute on other grounds as stated in</u> <u>Hawkins v.</u>
<u>1115 Legal Servs. Care</u>, 163 F.3d 684 (2d Cir.1998). The Second
Circuit has applied a loose pleading standard to these NYDHR
complaints and has recognized three types of "reasonably related
claims" where even if the claim was not specifically included in
the original complaint, a court should still consider the claim.
<u>Id.</u> at 1402-3. In the present matter, the most applicable type
of related claim is where the claim "would fall within the 'scope
of the EEOC investigation which can reasonably be expected to
grow out of the charge of discrimination.'" <u>Id.</u> at 1402 (quoting
<u>Smith v. American President Lines, Ltd.</u>, 571 F.2d 102, 107 n.10
(2d Cir. 1978)). In evaluating such claims a district court
should focus on "'on the factual allegations made in the [EEOC]
charge itself, describing the discriminatory conduct about which
a plaintiff is grieving.'" <u>Deravin v. Kerik</u>, 335 F.3d 195, 201
(2d Cir. 2003) (quoting <u>Freeman v. Oakland Unified Sch. Dist.</u>,
291 F.3d 632, 637 (9th Cir. 2002)).

In his charge plaintiff alleged that several "caucasian
carpenters" had been hired while he had not. (Def. Ex. J.) In
addition, he claimed that Dawn Nurse had informed him that he
"should be getting his job back." <u>Id.</u> Given these charges, it
is reasonable to believe that the NYDHR, in addition to examining
plaintiff's termination, would also have examined why he was not
rehired. Therefore, the rehiring claim was exhausted at the

administrative level.

**ii. Substantive case for rehiring**

The substantive review of plaintiff's Title VII and ADEA
rehiring claims will again follow the <u>McDonnell Douglas</u> burden-
shifting analysis described above. <u>Giannone v. Deutsche Bank
Sec., Inc.</u>, 392 F. Supp. 2d 576, 586 (S.D.N.Y. 2005) (applying
the <u>McDonnell Douglas</u> analysis where the plaintiff alleged she
was discriminated against when the defendants fired and then
refused to rehire her); <u>Idrees v. Beth Israel Hosp.</u>, 03 Civ. 464,
2004 WL 2346666, at *6 (S.D.N.Y. October 19, 2004) (using the
<u>McDonnell Douglas</u> burden-shifting approach where the plaintiff
brought a Title VII claim where he had resigned and the hospital
refused to rehire him).  To establish a prima facie case of
discrimination in the rehiring process, plaintiff must show: (1)
he belongs to a protected class; (2) he applied and was qualified
for a job for which the employer was seeking applicants; and (3)
he experienced an adverse employment action; (4) under
circumstances giving rise to an inference of discrimination.
<u>Brennan v. Metro. Opera Assoc.</u>, 192 F.3d 310, 316-7 (2d Cir.
1999) (defining the prima facie case to show discrimination in
rehiring under Title VII and the ADEA); <u>Giannone</u>, 392 F. Supp. 2d
at 586 (applying the same standard in a Title VII rehiring case).
If plaintiff is able show a prima facie case, then a presumption
in his favor is created.  <u>Brennan</u>, 192 F.3d at 317.

Defendants take issue with the second step in the prima facie case: they claim plaintiff never applied for the position. Plaintiff, though, argues that he did apply in the last week of April or early May 1999, before he was terminated. He claims he gave an application to a "Mrs. Yauway" in the KCHC personnel department. However, defendants state that no one named Yauway ever worked at KCHC. (Def. Ex. S at 2.) Additionally, defendants say they have no record that plaintiff submitted an application between April 1999 and July 1999. Id.

Plaintiff's claim that he applied does find support in the record. First, in his deposition plaintiff stated that the person he knew as "Mrs. Yauway" was formally known as "Mrs. Kinley." In Gorman's deposition he stated that a "Mrs. Kennerly" was responsible for collecting the applications for employment. (Pl.'s Ex. 2 at 25). Since this is a summary judgment motion, where the record must be viewed in the light most favorable to the plaintiff, the similarity of these names must be seen to support plaintiff's claim. Second, in a letter written in response to an inquiry by Dawn Nurse, Alan Schultheiss ("Schultheiss"), associate director of Facilities Management/Operations at KCHC, stated that his office had received an application from plaintiff for a temporary carpenter position. (Def. Ex. L). Third, plaintiff did request that defendants postpone his termination for three additional years,

17

but the request was denied.  All these facts support plaintiff's
assertion.  Since defendants dispute the claim that plaintiff
applied, the discrepancy between plaintiff and defendants'
interpretation of the facts raises a triable issue of fact
concerning whether he applied for a temporary or permanent
position.

Plaintiff satisfies the third step in the prima facie
analysis: he experienced an adverse employment action.  Despite
his qualifications, plaintiff was not rehired as a temporary
carpenter after defendants terminated him.  See Giannone, 392 F.
Supp. 2d at 589 (finding that plaintiff had established a prima
facie Title VII case where she showed that she was qualified for
the position, but was not rehired).

Under the fourth element of the prima facie analysis,
defendants contend that their actions bear no inference of
discrimination.  In response, plaintiff argues that because
defendants hired six temporary carpenters, all of whom were
younger than plaintiff and five of whom were white, that this
alone is sufficient to create an inference of discrimination.

At this stage, it is necessary to analyze plaintiff's race
discrimination and age discrimination claims separately.  To
support his racial discrimination claim plaintiff argues that
defendants replaced him with an individual outside his racial
protected class.  De la Cruz, 82 F.3d at 20.  This argument,

however, is insufficient to create an inference of discrimination even under the <u>de minimis</u> prima facie standard. The logic behind allowing plaintiff to establish a prima facie inference of discrimination based on defendants' hiring of a person outside plaintiff's protected class is that such an action would demonstrate an employer's "preference for a person not of the protected class." <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 153-54 (2d Cir.2000). Here, where defendants did hire a black carpenter, inferring a preference for a person outside the protected class is not possible. <u>Carr v. Westlb Admin., Inc.</u>, 171 F. Supp. 2d 302, 307 (S.D.N.Y. 2001) (holding in the ADEA context that where the plaintiff was replaced by someone in his protected class, who was older than plaintiff, no inference of discrimination could be found). If plaintiff had offered other evidence to show discrimination in the hiring process, then perhaps an inference could be possible. However, plaintiff offers no evidence of general discriminatory hiring practices by defendants; plaintiff does not even provide the race or ethnicity of the other persons who applied for the position. <u>Cf.</u> <u>Looby v. City of Hartford</u>, 152 F. Supp. 2d 181, 185-86 (D. Conn. 2001) (finding a prima facie inference of reverse discrimination where a white plaintiff showed that all the minorities who applied for a promotion were promoted, despite the fact that two white individuals were also promoted). Since plaintiff is unable to

establish the fourth element of his prima facie case, his claim
that he was not rehired due to his race is dismissed.

On the other hand, to establish a prima facie inference of
discrimination in his ADEA claim, plaintiff does not need to show
that all the people who replaced him were outside the protected
class,[3] but rather he must show that the people who replaced him
were all significantly younger than him.  O'Connor v. Consol.
Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that it is
immaterial whether the person who replaced plaintiff was over
forty or not, rather what matters is whether the person who
replaced plaintiff was substantially younger than plaintiff);
Brennan, 192 F.3d at 317 (finding that plaintiff had surmounted
the de minimis prima facie burden by simply showing that she had
been replaced by a much younger worker).  Plaintiff, who was
sixty-three when he was terminated, claims that the six
carpenters defendants hired ranged in age from thirty-nine years
old to fifty-two years old.  At a minimum then, plaintiff claims
that he was replaced by an individual who was eleven years
younger them him.  As a result, plaintiff has established a prima
facie inference of discrimination, and thereby a prima facie case
for age discrimination in his rehiring process.  See Hollander v.
Am. Cyanamid Co., 172 F.3d 192, 199 (2d Cir. 1999) (stating that

_____

[3] The ADEA defines its protected class to be all those
people over the age of forty.  29 U.S.C. § 631 (a) (2005); Roge
v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

the plaintiff had established a prima facie case where, of the two employees who replaced him one was eleven years younger than plaintiff and the other was one year younger) <u>abrogated on other grounds by</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000).

Now the burden of production for plaintiff's ADEA rehiring claim shifts to defendants to proffer a non-discriminatory reason for not rehiring plaintiff. Defendants do not surmount this burden.

Neither of defendants' proffered reasons are valid for consideration at this stage in the analysis.[4] First, defendants argue that they never received an application from plaintiff. This argument could be a sufficient nondiscriminatory justification; however, as shown, whether plaintiff submitted an application is a disputed fact that must be left for a jury to decide.[5] Next, defendants contend that plaintiff has made an

---

[4] Neither party mentions in their briefs whether the position plaintiff applied for required plaintiff to have passed the civil service exam. Therefore, it is unclear whether his failure to pass the test was a reason why he would not have been rehired.

[5] The most likely rationale for why plaintiff was not rehired might be gleaned from the same letter where Schultheiss states that plaintiff applied for a job. Schultheiss states that at the time his office received plaintiff's application, plaintiff was still employed as a provisional carpenter, and the Human Resources Department had not informed Schultheiss' office that plaintiff was still going to be terminated. Apparently, after plaintiff was granted the two additional months to gain his extra union credits, the Human Resources Department only informed

insufficient showing of a causal connection between his protected

status and defendants' failure to rehire him.  This contention,

though, is merely an argument against pretext and not a non-

discriminatory reason for not rehiring plaintiff.  Since

defendants have not rebutted the presumption created by

plaintiff's prima facie case, that presumption stands and

---

Schultheiss' office that plaintiff's termination had been
canceled and not that plaintiff's termination was simply on hold
for two months.  Schultheiss explains in the letter that since
his office did not know plaintiff was still going to be
terminated, they may have disregarded his application because it
appeared to them that plaintiff was merely applying for an
equivalent position to the one plaintiff already had.  KCHC does
not allow such applications.  Schultheiss explains the reason for
this in his letter.  If the hospital has ten temporary carpenters
and is advertising to add another temporary carpenter, if a
current temporary carpenter, who was not scheduled to be
terminated, were hired for the new position then the hospital
would still only have ten temporary carpenters.  It is plausible
that this explains why plaintiff claims he applied, while
defendants say they never received an application from him.
Defendants, however, do not rely on or even mention this
rationale in their briefs.  Under the McDonnell Douglas burden-
shifting analysis defendants must clearly and reasonably
specifically articulate the nondiscriminatory reason for their
actions.  Texas Department of Community Affairs v. Burdine, 450
U.S. 248, 255 (1981).  The purpose of this requirement is to
rebut the presumption created by the prima facie case and to
"frame the factual issue with sufficient clarity so that the
plaintiff will have a full and fair opportunity to demonstrate
pretext."  Id.  Since defendants never articulated Schultheiss'
rationale in any of their papers, plaintiff never had an
opportunity to respond to it.  Therefore, the rationale cannot be
considered.  Looby, 152 F. Supp. 2d at 186 (denying summary
judgment where defendants had not referenced in their briefs a
possible reason articulated in the pleadings); Halfond v. The
Legal Aid Society, 70 F. Supp. 2d 155, 162 (E.D.N.Y. 1998)
(rejecting defendant's vague and ambiguous explanation because it
did not "frame the factual issue with sufficient clarity so that
the plaintiff [would] have a full and fair opportunity to
demonstrate pretext.") (quoting Burdine, 450 U.S. at 255-56).

defendants' motion for summary judgment on plaintiff's ADEA
rehiring claim is denied.  <u>James v. New York Racing Ass'n</u>, 233
F.3d 149, 154 (2d Cir. 2000) ("[A] plaintiff who proves the
minimal prima facie case is entitled to prevail as a matter of
law even without evidence that would support a reasonable finding
of discriminatory motivation, if the employer does not come
forward with a reason.");  <u>Looby</u>, 152 F. Supp. 2d at 186
(refusing to dismiss plaintiff's Title VII case where defendants
never proffered a nondiscriminatory reason for not promoting
plaintiff, despite the fact that "defendants may have [had]
evidence of [a] legitimate nondiscriminatory reason" that they
never articulated in their briefs).

### (3)

### New York State Human Rights Law claims

In addition to the federal claims already discussed,
plaintiff also brings a charge of discrimination based on the
SHRL, New York Executive Law § 296.  This law is subject to an
election-of-remedies clause which states:

> Any person claiming to be aggrieved by an
> unlawful discriminatory practice shall have a
> cause of action in any court of appropriate
> jurisdiction . . . unless such person had
> filed a complaint hereunder or with any local
> commission on human rights.

N.Y. Exec. Law § 297(9) (McKinney 2005).  This prohibition
against a plaintiff filing in court after filing with the NYDHR
applies equally to state and federal courts.  <u>Whidbee v.</u>

Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000). As a result, "when a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from 'commencing an action' in [federal] court [based on the same incident.]" Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir. 1995) (quoting Emil v. Dewey, 49 N.Y.2d 968, 406 N.E.2d 744, 428 N.Y.S.2d 887 (1980)).

Based on this statute, when the NYDHR found there was "no probable cause to believe" plaintiff's charge, his only option concerning his SHRL claim was to appeal the determination to the New York State Supreme Court. See N.Y. Exec. Law § 298; (Def. Ex. K) (explaining plaintiff's rights following the division's determination). Plaintiff did not file an appeal and instead filed directly in federal court. In his brief plaintiff makes no effort to refute that his SHRL claim is barred by § 297(9). Therefore, his SHRL claim is dismissed.

**(4)**

**New York City is not a proper party to the action**

Lastly, the City of New York argues it is not a proper party to this suit since the HHC is a separate legal entity. The City argues that it did not employ plaintiff and that plaintiff does not make any direct allegation against the City. Plaintiff, again, does not respond to this argument.

New York federal and state courts have consistently held, in a variety of situations, that the City and the HHC are separate legal entities.  E.g. Lennon v. New York City, 392 F. Supp. 2d 630, 639 (S.D.N.Y. 2005) (finding that because the City was not the plaintiff's employer, and plaintiff made no direct allegations against the City, plaintiff could not sue the City under Title VII, the ADEA or the ADA); Centeno v. New York City, No. 02-CV-2745, 2005 WL 1126811, at *4 n.5 (E.D.N.Y. May 12, 2005) (dismissing plaintiff's Title VII claims against the City); Brennan v. City of New York, 59 N.Y.2d 791, 792, 451 N.E.2d 478, 479, 464 N.Y.S.2d 731, 732 (1983) (holding that the City and the HHC are separate legal entities in the wrongful death context). Plaintiff does not make any direct agitations of wrongful acts by the City.  All of his allegations involve employees of the HHC. In the absence of any direct allegations against the City, all claims against the City are dismissed.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiff's claims for termination, his claim of racial discrimination in rehiring, his SHRL claims, and all his claims against the City of New York. Summary judgment is denied as to plaintiff's claims for age discrimination in rehiring.


Dated: Brooklyn, New York
       March 3, 2006

                        SO ORDERED:


                        _____/s/_____
                        David G. Trager
                        United States District Judge